## In the United States Court of Appeals
## For the Eighth Circuit

MORGAN-LARSON, LLC; JOHNSON AUTO ELECTRIC,
INC.; SPEED STOP 32, INC.; and YOCUM OIL
COMPANY, INC.

Plaintiffs-Appellants,

v.

FERRELLGAS PARTNERS, L.P., A LIMITED PARTNERSHIP; FERRELLGAS,
L.P., A LIMITED PARTNERSHIP, DOING BUSINESS AS BLUE RHINO;
AMERIGAS PARTNERS, L.P., A LIMITED PARTNERSHIP; UGI
CORPORATION; AMERIGAS PROPANE, INC., DOING BUSINESS AS
AMERIGAS CYLINDER EXCHANGE; and AMERIGAS PROPANE, L.P.

Defendants-Appellees.

*Appeal from a Decision and Judgment of the United States District
Court for the Western District of Missouri, No. 4:14-MD-2567-GAF
Honorable Gary A. Fenner*

## DEFENDANTS-APPELLEES' RESPONSE TO PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING EN BANC

Dan M. Wall
Niall E. Lynch
Jesse B. McKeithen
LATHAM & WATKINS LLP
505 Montgomery St., Suite 2000
San Francisco, California 94111
(415) 391-0600 Telephone
(415) 395-8095 Facsimile

*Attorneys for Defendants Ferrellgas
Partners, L.P. and Ferrellgas, L.P.*

Jay N. Varon
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
(202) 672-5380 Telephone
(202) 672-5399 Facsimile

*Attorney for Defendants AmeriGas
Partners, L.P., AmeriGas Propane,
Inc., AmeriGas Propane, L.P., and
UGI Corporation*

Craig S. O'Dear
Catesby A. Major
Tracy R. Hancock
BRYAN CAVE, LLP-KCMO
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
(816) 374-3200 Telephone
(816) 374-3300 Facsimile

*Attorneys for Defendants Ferrellgas
Partners, L.P. and Ferrellgas, L.P.*

Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 271-2400 Telephone
(414) 297-4900 Facsimile

*Attorneys for Defendants AmeriGas
Partners, L.P., AmeriGas Propane, Inc.,
AmeriGas Propane, L.P., and UGI
Corporation*

Brandon J.B. Boulware
Jeremy M. Suhr
GERMAN MAY, PC
1201 Walnut Street, 20th Floor
Kansas City, Missouri  64106
(816) 471-7700 Telephone
(816) 471-2221 Facsimile

*Attorneys for Defendants AmeriGas
Partners, L.P., AmeriGas Propane, Inc.,
AmeriGas Propane, L.P., and UGI
Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

I. INTRODUCTION ......................................................................1

II. ARGUMENT...........................................................................3

    A.     Plaintiffs' Rehearing Petition Rests On A Fundamentally Flawed Premise. ..................................................................3

    B.     The Panel Decision Does Not Conflict With Supreme Court Precedent. ..................................................................4

    C.     The Majority Decision Is Consistent with Eighth Circuit Precedent. ..................................................................10

    D.     No Issue Of Exceptional Importance Warrants En Banc Review..................................................................13

III. CONCLUSION...........................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................1, 3

*Central Virginia Community College v. Katz*,
546 U.S. 356 (2006)................................................................................6

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821) ...........................................................7

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ............................................................11

*DXS, Inc. v. Siemens Medical Systems, Inc.*,
100 F.3d 462 (6th Cir. 1996) ...........................................................8, 9

*Gabelli v. SEC*,
133 S. Ct. 1216 (2013)............................................................................6

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
392 U.S. 481 (1968)................................................................................8

*Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*,
No. 13-2664 ADM/SER, 2014 U.S. Dist. LEXIS 31188 (D. Minn.
Mar. 11, 2014), *aff'd on other grounds*, 797 F.3d 538 (8th Cir.
2015) .......................................................................................................11

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)......................................................................*passim*

*McDonough v. Anoka County.*,
799 F.3d 931 (8th Cir. 2015) ...............................................................6

*Midwestern Machinery Co. v. Northwestern Airlines, Inc.*,
392 F.3d 265 (8th Cir. 2004) ........................................................11, 14

Appellate Case: 15-2789    Page: 4    Date Filed: 11/07/2016 Entry ID: 4467141

*Pace Industries, Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ...................................................................9

*United States v. Samuels*,
  808 F.2d 1298 (8th Cir. 1987) ..............................................................1

*United States v. Santana*,
  6 F.3d 1 (1st Cir. 1993)..........................................................................6

*Valladolid v. Pacific Operations Offshore, LLP*,
  604 F.3d 1126 (9th Cir. 2010), *aff'd and remanded*, 565 U.S. 207
  (2012)......................................................................................................6

*Varner v. Peterson Farms*,
  371 F.3d 1011 (8th Cir. 2004) ........................................................10, 11

*In re Wholesale Grocery Products Antitrust Litigation*,
  722 F. Supp. 2d 1079 (D. Minn. 2010).................................................12

*In re Wholesale Grocery Products Antitrust Litigation*,
  752 F.3d 728 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 2805 (2015) ........1, 12, 13

*Zenith Radio Corp. v. Hazeltine Research*,
  401 U.S. 321 (1971).................................................................................8

## OTHER AUTHORITIES

3 Phillip E. Areeda & Herbert Hovenkamp, <u>Antitrust Law</u> (rev. ed.
  1995) ........................................................................................................8

Sandy Shore, *Propane suppliers quietly reduce size of refills*, San
  Diego Union-Tribune, May 22, 2009,
  http://www.sandiegouniontribune.com/sdut-us-skimping-propane-
  052209-2009may22-story.html .......................................................15

Charles Alan Wright & Mary Kay Kane, <u>Law of Federal Courts</u> (7th
  ed. 2011) ..................................................................................................5

Appellate Case: 15-2789    Page: 5    Date Filed: 11/07/2016 Entry ID: 4467141

## I.    INTRODUCTION

Rehearing en banc is reserved for the rare case where the full Court's intervention is necessary to restore uniformity to this Court's decisions or to address an issue of exceptional importance. *See United States v. Samuels*, 808 F.2d 1298, 1300 (8th Cir. 1987). Neither is the case here. Plaintiffs' contentions to the contrary all rest on the premise that once a continuing price-fixing conspiracy has been established, the four-year statute of limitations begins anew for each collusive sale. But that premise is simply not presented here. As the panel correctly held, Plaintiffs did not sufficiently allege a continuing price-fixing conspiracy under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Plaintiffs' failure to adequately allege the predicate ongoing conspiracy dooms each of the claims made in support of rehearing, and that case-specific pleading failure is reason enough to deny further review.

There is also no conflict between the panel decision and any decision of the Supreme Court or this Court. The single sentence from *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), on which Plaintiffs rely, is casual dicta in a RICO case—not the announcement of a novel, definitive, or comprehensive rule of antitrust law. Nor do the two paragraphs in *In re Wholesale Grocery Products Antitrust Litigation*, 752 F.3d 728 (8th Cir. 2014) ("*Wholesale Grocery*"), *cert. denied*, 135 S. Ct. 2805 (2015), create an intra-circuit conflict. The panel decision fits squarely

1

within this Court's established continuing violation framework; any difference in outcome is readily explained by a difference in facts.

This case, moreover, is not about whether to create an "exception" to *per se* liability under the Sherman Act. Pet. 13-15. Applying a congressionally enacted limitations period to bar untimely antitrust claims does not "immunize[]" anyone from antitrust liability (*id.* at 13); it simply discourages prospective plaintiffs from sleeping on their rights if they want to recover money damages. That is precisely what Plaintiffs did here, making it a particularly unsympathetic case in which to vindicate Plaintiffs' proffered policy concerns. In 2009, the very same claims were brought against the very same Defendants on behalf of a putative class that initially included direct purchasers like Plaintiffs. The purported agreement in 2008 to reduce propane tank fill amounts was not a secret, and the asserted failure to adopt a corresponding decrease in price was simultaneous. There was nothing stopping these sophisticated Plaintiffs from bringing their claim within the four-year limitations period, and no reason to excuse that failure.

In the end, the issue on appeal was whether Plaintiffs could circumvent the Sherman Act's four-year statute of limitations by invoking the continuing violation doctrine without properly alleging a continuing conspiracy. The panel correctly held that they could not, and that decision does not warrant en banc review. This Court should deny the rehearing petition.

2

## II.    ARGUMENT

### A.    Plaintiffs' Rehearing Petition Rests On A Fundamentally Flawed Premise.

Plaintiffs' rehearing petition rests entirely on the notion that a different limitations rule applies in the case of a "continuing" price-fixing conspiracy. When the conspiracy is ongoing, Plaintiffs argue, there is a "continuing violation" of the antitrust laws and each sale of the targeted product restarts the limitations period. Plaintiffs claim to find support for this argument in the Supreme Court's decision in *Klehr*, and this Court's decision in *Wholesale Grocery*. But there is a fatal flaw in Plaintiffs' argument: its fundamental predicate—that there is a continuing price-fixing conspiracy—is conspicuously absent from this case.

In asking this Court to take the extraordinary step of granting en banc review, Plaintiffs skip over a critical part of the panel's decision. Quoting *Twombly*, the panel held that Plaintiffs failed to "allege[] facts after 2008 to 'render a [continuing] § 1 conspiracy plausible.'" Op. 10 (alteration in original) (quoting *Twombly*, 550 U.S. at 556). More specifically, the panel explained that, "[a]lthough Plaintiffs assert that Defendants' conspiracy is a continuing conspiracy, Plaintiffs only claim that Defendants continue to maintain the same fill levels and never specifically allege in their complaint that Defendants continue to conspire about prices." *Id.* Because "Plaintiffs have not pled overt acts sufficient to show a continuing conspiracy," and because "all of Plaintiffs' factual allegations

3

of a conspiratorial agreement by Defendants occurred in 2008," "outside the limitations period," the panel found Plaintiffs' claim time-barred. *Id.* at 9-11.

This pleading failure undermines each of Plaintiffs' arguments in favor of rehearing. In the absence of a continuing conspiracy, Plaintiffs have no "continuing violations" theory. That is reason alone to deny further review.

### B. The Panel Decision Does Not Conflict With Supreme Court Precedent.

The panel decision does not conflict with any Supreme Court precedent. Plaintiffs' assertions to the contrary rely primarily on one sentence in *Klehr*. The panel decision does not conflict with *Klehr* for at least three, independent reasons.

*First*, the sentence in *Klehr* on which Plaintiffs rely is casual dicta that they take out of context. *Klehr* was a civil RICO case and the Court was asked to decide the applicable accrual rule. The only accrual rule that would have helped the plaintiffs in that case was the Third Circuit's "last predicate act" rule, in which the plaintiffs could recover not just for "any added harm caused them by that late-committed act, but for all the harm caused by all the acts that make up the total 'pattern.'" *Klehr*, 521 U.S. at 187. In rejecting that approach, the Court looked to antitrust law's "continuing violation" doctrine. The Court explained that, unlike the last predicate act rule, the continuing violation doctrine "does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Id.* at 189. The discussion of the continuing violation doctrine was thus

4

relevant *only* to demonstrate how the last predicate act rule "goes too far," *i.e.*, by allowing the plaintiffs to extend the limitations period indefinitely by bootstrapping injuries caused by earlier acts. *Id.*

To illustrate the substance of the continuing violation doctrine, the Court stated:

> Antitrust law provides that, in the case of a "continuing violation," say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, "each overt act that is part of the violation and that injures the plaintiff," *e.g.*, each sale to the plaintiff, "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times."

*Id.* As Plaintiffs concede (Pet. 3, 5-6), and as the panel explained (Op. 7), the Court was simply stating its understanding of the *existing* continuing violation doctrine. The Court did not consider the various issues and policy arguments about what constitutes an overt act and when a new sale qualifies as an overt act. And it was not creating any new law. The Court's understanding of the continuing violation doctrine—apart from the critical distinction between its duration and that of the last predicate act rule—was simply irrelevant to the issue actually before the Court.

Far from being necessary to the decision, this one sentence was not even carefully considered dicta. *See* Charles Alan Wright & Mary Kay Kane, Law of Federal Courts § 58 (7th ed. 2011) (in evaluating dicta, "[m]uch depends on the character of the dictum"); *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d

5

1126, 1131 (9th Cir. 2010) ("We do not blindly . . . follow an unconsidered statement simply because it was uttered by the Supreme Court."), *aff'd and remanded*, 565 U.S. 207 (2012); *cf. United States v. Santana*, 6 F.3d 1, 9 (1st Cir. 1993) (deferring to carefully considered dicta that had "the earmarks of deliberative thought purposefully expressed" and other "badges of reliability").[1] As the Supreme Court has counseled time and time again, "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821)). There are good reasons for this caution: whereas "[t]he question actually before the Court is investigated with care, and considered in its full extent[;] [o]ther principles which may serve to

---

[1] *McDonough v. Anoka County.*, 799 F.3d 931 (8th Cir. 2015), on which Plaintiffs rely (Pet. 7), stands in stark contrast. There, the "dicta" was the Supreme Court's determination in *Gabelli v. SEC*, 133 S. Ct. 1216 (2013), that a cause of action generally accrues when the plaintiff has a full and complete cause of action, and that the discovery rule is an "exception" to that "standard rule." *McDonough*, 799 F.3d at 941. Prior Eighth Circuit case law had instead treated the discovery rule as the default rule—*i.e.*, the exact opposite of what the Supreme Court declared in *Gabelli*. *Id.* In deciding whether the panel could overrule that contradictory circuit law, this Court characterized the Supreme Court "dicta"—which included a detailed discussion of the origins of the accrual rule and of the ordinary meaning of "accrue," *Gabelli*, 133 S. Ct. at 1220-21—as "considered." *McDonough*, 799 F.3d at 942. And, even then, the Court used the considered dicta only to guide the discussion. *See id.*

Appellate Case: 15-2789     Page: 11     Date Filed: 11/07/2016 Entry ID: 4467141

illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." *Cohens*, 19 U.S. at 399-400.

*Second*, even if *Klehr*'s illustrative example were entitled to more weight, it does not apply here. The "continuing violation" example given was "a price–fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years." 521 U.S. at 189. As explained in Section II.A, *supra*, the panel held that Plaintiffs failed to adequately allege such a conspiracy and Plaintiffs have not addressed (let alone challenged) that holding in their petition. Moreover, this case never involved a "*series* of unlawfully high priced sales over a period of years," *Klehr*, 521 U.S. at 189 (emphasis added); Plaintiffs alleged only one price "increase," in 2008, well outside the limitations period. *Klehr*, in contrast, was plainly referencing the prototypical price-fixing conspiracy in which there is evidence of additional actions in furtherance of the conspiracy to maintain or increase prices during the limitations period. We know that because the Court *quoted* a paragraph in the Areeda treatise which referenced a "continuing" conspiracy involving "conventional price fixing" and an "illegal price-fixing conspiracy" that was still "alive" at the time of "each sale at the fixed price." 3 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 338b (rev. ed. 1995). Only by focusing on the second half of the sentence in *Klehr* and ignoring the

Appellate Case: 15-2789    Page: 12    Date Filed: 11/07/2016 Entry ID: 4467141

triggering event can Plaintiffs contend that the language conflicts in any way with the panel decision.

The cases cited by *Klehr* do nothing to further Plaintiffs' argument. *See Klehr*, 521 U.S. at 189 (citing *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338 (1971); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968); *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996)). They each stand for the basic proposition that the continuing violation doctrine can toll the statute of limitations in the antitrust context. The two Supreme Court cases (*Zenith Radio* and *Hanover Shoe*) make clear that a later overt act is required to restart the limitations period, but do not describe what constitutes an overt act. Neither is a price-fixing case. And neither holds that ongoing sales—without more—amount to an overt act sufficient to constitute a continuing violation. *See Zenith*, 401 U.S. 321 (Section 1 allegations involved ongoing refusals to license); *Hanover Shoe*, 392 U.S. 481 (Section 2 claim based on defendant's continued refusal to sell its machinery rather than lease it).

The other cited case, meanwhile, is entirely consistent with the panel decision. Indeed, the Sixth Circuit set forth precisely the same test applied by the panel here. *Compare DXS*, 100 F.3d at 467 ("An overt act that restarts the statute of limitations is characterized by two elements: (1) it must 'be a new and independent act that is not merely a reaffirmation of a previous act'; and (2) it must

8

'inflict new and accumulating injury on the plaintiff.'" (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)), *with* Op. 6 (same).

*Third*, the policy concerns that animated the *Klehr* Court's rejection of the last predicate act rule are equally applicable here. The Court was concerned that the Third Circuit's interpretation would "permit plaintiffs who know of the defendant's pattern of activity simply to wait, 'sleeping on their rights,' . . . perhaps bringing suit only long after the 'memories of witnesses have faded or evidence is lost'" and would, thereby, "conflict[] with a basic objective—repose— that underlies limitations periods." *Klehr*, 521 U.S. at 187 (citations omitted). So too here. Plaintiffs claim that, because it can only recover damages for injuries sustained within the previous four years, there is no cause for concern. Pet. 15 n.11. But the rule they espouse *would* permit them to "sleep on their rights" (which is exactly what they did here), and because the limitations period would run indefinitely, suit *could* be brought long after memories have faded and evidence has been lost. That money damages would accrue only for a four-year period provides no meaningful repose when that four-year period could be restarted years or even decades later. *See* Oral Argument at 4:55-5:51 (Plaintiffs conceding that their rule would effectively allow suit to be brought 100 years after the alleged 2008 agreement). As the panel recognized, that would be antithetical to the purposes served by limitations period generally and private antitrust suits

Appellate Case: 15-2789    Page: 14    Date Filed: 11/07/2016 Entry ID: 4467141

specifically.  *See* Op. 11 (citing cases).

## C.  The Majority Decision Is Consistent with Eighth Circuit Precedent.

The majority decision is also consistent with Eighth Circuit case law decided after *Klehr*.  It is settled law in the Eighth Circuit that, "even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act."  *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004).  "An overt act has two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and accumulating injury on the plaintiff."  *Id.* (quoting *Varner*, 371 F.3d at 1019).  Plaintiffs do not dispute that this is the governing framework under circuit law.  Nor do they dispute that the panel set forth and applied that framework to the facts of this case.

The panel then held that, without any specific allegations that "Defendants continue to conspire about prices," mere continued sales under an alleged unlawful agreement do not constitute an overt act sufficient to restart the limitations period.  Op. 10.  That is fully consistent with circuit precedent.  *See Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 271 (8th Cir. 2004) ("The typical antitrust continuing violation occurs in a price-fixing conspiracy, actionable under § 1 of the Sherman Act, *when conspirators continue to meet to fine-tune their cartel agreement*." (emphasis added) (citation omitted)); *Concord Boat Corp. v.*

10

*Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000) ("[A]cts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations." (citation omitted)); *see also Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2664 ADM/SER, 2014 U.S. Dist. LEXIS 31188, at *23 (D. Minn. Mar. 11, 2014) ("Where a defendant's continued sales under an anticompetitive arrangement merely enforces the initial, unabated arrangement, the sales do not constitute a continuing violation."), *aff'd on other grounds*, 797 F.3d 538 (8th Cir. 2015). Indeed, in *Varner*, this Court specifically held that mere "[p]erformance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period." 371 F.3d at 1020.

Plaintiffs nevertheless contend that the panel decision conflicts with one circuit decision: *Wholesale Grocery*. That is incorrect. In *Wholesale Grocery*, the plaintiff alleged a market allocation conspiracy that was formed outside the limitations period, but the overt act was the actual raising of prices within the limitations period. 752 F.3d at 731 (during limitations period, plaintiff's "fees increased thirty basis points"). As the district court explained, although "[c]losing the exchanged facilities effectuated the alleged allocation conspiracy" outside the limitations period, "charging supra-competitive prices" was not "effectuated" until the defendants "raised their prices" within the limitations period. *In re Wholesale Grocery Prods. Antitrust Litig.*, 722 F. Supp. 2d 1079, 1087 (D. Minn. 2010).

11

Here, Plaintiffs do not identify any new and independent acts by Defendants within the limitations period. They allege only that Defendants reduced the amount of propane in their tanks in 2008, without reducing the price, and continued to sell 15-pound tanks. Plaintiffs do not allege that Defendants continued to conspire on price, that Defendants increased their prices after 2008, or that Defendants implemented parallel prices at any time. *See* Op. 10. *Wholesale Grocery* is thus "easily distinguishable" from the present case. *Id.* at 8.[2]

If Plaintiffs were correct, *Wholesale Grocery* would represent a significant departure from this Court's precedent—including *Varner*. And Plaintiffs offer no persuasive reason why the decision should be read to create such a conflict.[3] The statute of limitations is addressed in two paragraphs. *See Wholesale Grocery*, 752 F.3d at 736-37. The vast majority of the discussion rests on the theory that the anticompetitive nature of the agreement was not known until several years later.

---

[2] Plaintiffs insist that a conspiracy to maintain prices is no different than a conspiracy to increase prices. Pet. 10-11. But that misses the point. The distinction between this case and *Wholesale Grocery* is not the difference between raising prices and maintaining prices; it is between alleging a collusive price increase or maintenance during the limitations period (as in *Wholesale Grocery*) and alleging *nothing* about the price collusion or collaboration during the limitations period (as in this case).

[3] Plaintiffs dismiss *Varner* because it involved a tying arrangement, not price-fixing. The test for whether a continuing violation exists, however, does not change depending on the underlying antitrust claim. The application of the continuing violations framework will, of course, vary based on the facts of each case. And that is why *Wholesale Grocery* is consistent with *Varner* and distinguishable from this case: the different facts explain the different results.

12

And the decision does not discuss, let alone distinguish, the other post-*Klehr* circuit decisions setting forth and applying the two-part framework for defining an overt act. That is because, as the panel explained, the holding in *Wholesale Grocery* "is consistent with other decisions in which we held that in order to restart the statute of limitations, more than the mere performance or reaffirmation of an unlawful agreement is required to satisfy the overt act requirement of a continuing antitrust violation." Op. 8-9.

### D.   No Issue Of Exceptional Importance Warrants En Banc Review.

Plaintiffs contend that this case also warrants en banc review because it presents an issue of exceptional importance—namely, "whether to create an exception to the Sherman Act's *per se* prohibition against horizontal agreements in restraint of trade where competitors continue to charge supracompetitive prices." Pet. 1. But the panel decision does no such thing. The decision does not "immunize[] ongoing price-fixing." *Id.* at 13. Nor does it bar consumers from enforcing antitrust claims against companies engaged in ongoing conspiracies. *See id.* at 2, 13-15. It simply holds that Plaintiffs failed to allege any ongoing conspiratorial conduct and, instead, chose to base their claim entirely on conduct from 2008. There is nothing exceptional about the straightforward application of the statute of limitations to a claim filed two years after the limitations period had expired.

Appellate Case: 15-2789     Page: 18     Date Filed: 11/07/2016 Entry ID: 4467141

Plaintiffs again ignore this pleading failure. They conjure up a gaping loophole in antitrust enforcement for "maintenance" of supracompetitive prices, and imagine a world in which parties can conspire to fix prices "in perpetuity" "immune from antitrust liability." Pet. 13-14. The "[d]angerous" exception Plaintiffs fear (Pet. 13) finds no support in the panel's actual decision or on the facts of this case.

This was not some "secret" conspiracy. *Midwestern Mach.*, 392 F.3d at 272. The decision to reduce the fill level without corresponding price adjustments was covered by the media in 2009.[4] And, in 2009, the very same claims were brought against the very same Defendants on behalf of a putative class of "[a]ll persons who purchased a Propane Tank sold, marketed or distributed by any Defendant."[5] Thus, by 2009 at the latest, Plaintiffs were well aware of their claims and, to the

---

[4] *See, e.g.*, Sandy Shore, Associated Press, *Propane suppliers quietly reduce size of refills*, San Diego Union-Tribune, May 22, 2009, http://www.sandiegouniontribune.com/sdut-us-skimping-propane-052209-2009may22-story.html.

[5] *See* Consolidated Class Action Compl. ¶ 77, *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, Case No. 09-02086-MD-W-GAF (W.D. Mo.), ECF No. 79 ("*In re Propane I*"). The named plaintiffs in *In re Propane I* were all indirect purchasers, but they defined their class to include all direct and indirect purchasers. In fact, the current Plaintiffs alleged that "[t]he proposed class was not limited to indirect purchasers. Plaintiffs and the other members of the proposed Direct-Purchaser Class in this case were thus putative absent class members in [*In re Propane I*]." Direct Purchaser Consolidated Am. Compl. ¶ 101, *In re Pre-Filled Propane Tank Antitrust Litig.*, Case No. 14-md-2567 (W.D. Mo.), ECF No. 102. The indirect purchasers from *In re Propane I* subsequently settled that case, but the putative absent direct purchasers did not pursue their claims.

14

extent they were injured at all, they were injured well within the limitations period. Yet, while others were bringing antitrust claims against Defendants, Plaintiffs chose to do nothing.

## III. CONCLUSION

For all the foregoing reasons, Plaintiffs-Appellants' Petition for Rehearing En Banc should be denied.

Dated: November 7, 2016

Respectfully Submitted,

s/ Niall E. Lynch
Dan M. Wall
Niall E. Lynch
Jesse B. McKeithen
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email: dan.wall@lw.com
niall.lynch@lw.com
jesse.mckeithen@lw.com

Craig S. O'Dear
Catesby A. Major
Tracy R. Hancock
BRYAN CAVE, LLP-KCMO
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
Telephone: 816.374.3200
Facsimile: 816.374.3300
Email: csodear@bryancave.com
catesby.major@bryancave.com
tracy.hancock@bryancave.com

*Attorneys for Defendants*

Appellate Case: 15-2789    Page: 20    Date Filed: 11/07/2016 Entry ID: 4467141

*Ferrellgas Partners, L.P.*
*and Ferrellgas, L.P.*

Dated:  November 7, 2016

Respectfully Submitted,

s/ Jay N. Varon
Jay N. Varon
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Telephone: 202.672.5380
Facsimile: 202.672.5399
Email: jvaron@foley.com

Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414.271.2400
Facsimile: 414.297.4900
Email: ehaas@foley.com
kgehl@foley.com

Brandon J.B. Boulware
Jeremy M. Suhr
GERMAN MAY, PC
1201 Walnut Street, 20th Floor
Kansas City, Missouri  64106
Telephone: 816.471.7700
Facsimile: 816.471.2221
Email: brandonb@germanmay.com
jeremys@germanmay.com

*Attorneys for Defendants*
*AmeriGas Partners, L.P.,*
*AmeriGas Propane, Inc.,*
*AmeriGas Propane, L.P.,*
*and UGI Corporation*

16

# CERTIFICATE OF SERVICE

The undersigned herby certifies that on November 7, 2016, a copy of the foregoing was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.


Dated: November 7, 2016                    s/ Niall E. Lynch
                                           Niall E. Lynch

                                           *Attorney for Defendants*
                                           *Ferrellgas Partners, L.P.*
                                           *and Ferrellgas, L.P.*

1