## In the United States Court of Appeals
## For the Eighth Circuit

MORGAN-LARSON, LLC; JOHNSON AUTO ELECTRIC, INC.;
SPEED STOP 32, INC.; and YOCUM OIL COMPANY, INC.

Plaintiffs-Appellants,

v.

FERRELLGAS PARTNERS, L.P., A LIMITED PARTNERSHIP;
FERRELLGAS, L.P., A LIMITED PARTNERSHIP, DOING BUSINESS AS
BLUE RHINO; AMERIGAS PARTNERS, LP, A LIMITED PARTNERSHIP;
UGI CORPORATION; AMERIGAS PROPANE, INC., DOING BUSINESS AS
AMERIGAS CYLINDER EXCHANGE; and AMERIGAS PROPANE, L.P.

Defendants-Appellees.

*Appeal from a Decision and Judgment of the United States District Court
for the Western District of Missouri, No. 4:14-MD-2567-GAF
Honorable Gary F. Fenner*

## PLAINTIFFS-APPELLANTS' SUPPLEMENTAL REPLY BRIEF

H. Laddie Montague, Jr.
Eric L. Cramer
Martin I. Twersky
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000 Telephone
(215) 875-4613 Facsimile

*Interim Co-Lead Counsel for the
Proposed Direct Purchaser Class*

Kit A. Pierson
Emmy L. Levens
Daniel Silverman
COHEN MILSTEIN SELLERS
 & TOLL PLLC
1100 New York Ave., N.W., Suite 500
Washington, D.C. 20005
(202) 408-4600 Telephone
(202) 408-4699 Facsimile

*Interim Co-Lead Counsel for the
Proposed Direct Purchaser Class*

Steve Susman
Vineet Bhatia
Stephen Morrissey
Lindsay Calkins
SUSMAN GODFREY, L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
(713) 653-9366 Telephone
(713) 654-6666 Facsimile

*Interim Co-Lead Counsel for the
Proposed Direct Purchaser Class*

Richard F. Lombardo
SHAFFER LOMBARDO SHURIN,
P.C.
2001 Wyandotte
Kansas City, MO 64108
(816) 931-0500 Telephone

*Interim Liaison Counsel for the
Proposed Direct Purchaser Class*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..........................................................................1

II.    ARGUMENT.................................................................................2

       A.    Established Precedent Deems Plaintiffs' Claims Timely. ...................2

       B.    Plaintiffs Have Plausibly Plead a Continuing Violation......................5

       C.    Continued Conspiratorial Communications Cannot be Reduced
             to Lawful Reaffirmations. ....................................................9

       D.    Defendants Mangle the Law on Speculative Damages.......................12

       E.    Public Policy Demands that Unlawful Conspiracies Such as
             This be Prosecuted..............................................................13

III.   CONCLUSION.............................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al George, Inc. v. Envirotech, Corp.*,
939 F.2d 1271 (5th Cir. 1991) ...........................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................5

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ...........................................................12

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .........................................................5, 7

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ..........................................................3

*In the Matter of Ferrellgas Partners*,
FTC Dkt. No. 9360, 2014 WL 5787605 (Oct. 31, 2014) ...................8

*Grand Rapids Plastics, Inc. v. Lakian*,
188 F.3d 401 (6th Cir. 1999) ..........................................................10

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) ........................................................10

*Kaw Valley Elec. Coop. Co., Inc. v. Kan. Elec. Power Coop., Inc.*,
872 F.2d 931 (10th Cir. 1989) ..........................................................3

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997).....................................................................1, 4, 5

*Lancianese v. Bank of Mount Hope*,
783 F.2d 467 (4th Cir. 1986) ............................................................3

*Lehman v. Lucom*,
727 F.3d 1326 (11th Cir. 2013) ......................................................10

*Meijer, Inc. v. 3M*,
No 04-3871, 2006 WL 1660188 (E.D. Pa. July 13, 2005) ...............12

Appellate Case: 15-2789   Page: 4   Date Filed: 02/27/2017 Entry ID: 4505805

*Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*,
    392 F.3d 265 (8th Cir. 2004) ..........................................................................3, 10

*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
    517 F.2d 117 (5th Cir. 1975) ...............................................................................13

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    834 F.3d 943 (8th Cir. 2016) ............................................................................4, 5

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ...................................................................................6

*United States v. Lewis*,
    759 F.2d 1316 (8th Cir. 1985) ................................................................................7

*United States v. Williams*,
    87 F.3d 249 (8th Cir. 1996) ....................................................................................7

*Varner v. Peterson Farms*,
    371 F.3d 1011 (8th Cir. 2004) ..............................................................................12

*In re Wholesale Grocery Prods. Antitrust Litig.*,
    752 F.3d 728 (8th Cir. 2014) ............................................................................1, 5

*Z Techs. Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ..................................................................................3

## OTHER AUTHORITIES

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (4th ed. 2016)............................10

Appellate Case: 15-2789    Page: 5    Date Filed: 02/27/2017 Entry ID: 4505805

# I.    INTRODUCTION

This case presents a classic continuing violation: Defendants conspired to set fill-levels and prices through at least 2010, within the four-year limitations period, such that "each sale to the plaintiff starts the statutory period running again."  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (internal quotations marks and citation omitted); *see also In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 736 (8th Cir. 2014).  Defendants agree that plausible allegations of an overt act during a continuing conspiracy restarts the limitations period but, ignoring this precedent, deny that a sale at pre-agreed prices and/or quantities constitutes an "overt act."   However, nothing in Defendants' cited authority warrants overturning *Wholesale Grocery* and adopting a rule at odds with the Supreme Court's description of the continuing violation doctrine in *Klehr*.

Critically, Defendants do not challenge that Plaintiffs have plausibly alleged a conspiracy to increase the prices of propane tanks (by reducing fill levels) beginning in 2008.   Antitrust law *presumes* that a conspiracy continues until expressly abandoned—a presumption that is buttressed by allegations that Defendants continued communicating during the limitations period to monitor compliance with the conspiracy to adhere to a 15-pound fill-level, allocate customers, and tweak the conspiracy by assuring each other that neither was

1

reducing prices to offset their previously-agreed quantity reduction. *See*, *e.g.*, Consolidated Am. Compl. ("CAC") ¶ 92 (JA0151).

Finally, Defendants' repeated attempts to re-characterize their 2010 conspiratorial communications as lawful, "reaffirmations" of a prior agreement lack any basis in legal authority or common sense. Agreements among horizontal competitors to eliminate price competition and allocate customers constitute *per se* violations of the Sherman Act and those who engage in them are not deserving of repose.

## II. ARGUMENT

### A. Established Precedent Deems Plaintiffs' Claims Timely.

Defendants concede that the Complaint is timely if it alleges "a continuation of the alleged 2008 conspiracy manifested by overt acts during the four years prior." En Banc Supplemental Brief for Defendants-Appellees ("Defs. Supp.") at 1. They do not and cannot deny that in *Klehr* and *Wholesale Grocery*, the Supreme Court and this Court expressed the view that where horizontal competitors conspire to eliminate price competition on future sales, any future sale taking place before the conspirators affirmatively abandon their conspiracy is, itself, an "overt act." Horizontal conspiracies to eliminate price competition are distinct from other types of anticompetitive conduct because would-be competitors can choose *at any time* to abandon their illegal agreement in favor of true competition. No part of the

2

alleged conspiracy was self-fulfilling—rather Plaintiffs allege that Defendants continuously and repeatedly adhered to their agreement to set tank fill-levels at 15 pounds as a means of raising prices. The continuing violation doctrine provides a mechanism for prosecuting such unlawful acts that occur within the limitations period.

None of Defendants' cited authority contravenes the rule set forth in *Klehr* and *Wholesale Grocery* because none of Defendants' authority involves horizontal agreements to eliminate price competition. *See* Defs. Supp. at 4-6.[1] It is therefore unsurprising that Defendants' authority addresses a distinction inapplicable to such conspiracies. A future sale at fixed prices, fixed fill-levels, or to agreed-upon customers can be avoided at any time. Thus, such sales are not merely the "unabated inertial consequences" of conduct preceding the limitations period.

---

[1] *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000) (merger); *Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265, 271 (8th Cir. 2004) (monopoly); *Lancianese v. Bank of Mount Hope*, 783 F.2d 467 (4th Cir. 1986) (antitying provisions of the Bank Holding Company Act); *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014) (monopoly); *Al George, Inc. v. Envirotech, Corp.*, 939 F.2d 1271, 1274 (5th Cir. 1991) (conspiracy to monopolize and malicious prosecution); *Kaw Valley Elec. Coop. Co., Inc. v. Kan. Elec. Power Coop., Inc.*, 872 F.2d 931, 933 n.5 (10th Cir. 1989) (refusal to deal).

3

Defendants' attempt to distinguish price-fixing cases by characterizing this case as involving only a "one-time" fill reduction is similarly unavailing. Defendants concede the agreement was, in fact, to make 15 pounds the standard fill-level in the future, one that could easily have been changed at any time by simply pumping between 15 and 17.5 pounds into the same tanks. Paragraph 92 of the Complaint alleges that Defendants entered into and monitored compliance with "their anticompetitive agreement by offering a price reduction or competing for one another's customers or geographic markets." (JA0151). Accordingly, this case is indistinguishable from the price-fixing cases cited by Plaintiffs.

Defendants continue to disregard *Klehr* as irrelevant dicta. But the key language in *Klehr* expressly stated that it applied to the continuing violation doctrine in "a price-fixing conspiracy." *Klehr*, 521 U.S. at 189. As Judge Benton explained, "federal courts . . . are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings." *In re Pre-Filled Propane Tank Antitrust Litig.*, 834 F.3d 943, 950 (8th Cir. 2016) (internal quotation omitted). This is especially true where, as here, the dicta rests on established Supreme Court precedent.

Defendants incorrectly assert that *Wholesale Grocery*'s holding "centered on the fact that" the anticompetitive nature of the agreement was not revealed for several years. But, as Judge Benton recognized, whether the *Wholesale Grocery*

defendants concealed the anticompetitive nature of their agreement is irrelevant to the continuing violation analysis given *Klehr*'s statement that, "the statutory period runs again 'regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'" 834 F.3d at 952 (quoting *Klehr*, 521 U.S. at 189).

*Wholesale Grocery* correctly rejected any interpretation of the continuing violation doctrine that would allow parties to "reap the profits of their illegal agreement with impunity because any antitrust claims would be time barred." 752 F.3d at 736. But the rule Defendants advocate—in which they are immune from prosecution in perpetuity simply because some part of their conspiracy was earlier revealed—would allow just that. No court has adopted such an interpretation of the continuing violation doctrine and this Court should not be the first.

### B. Plaintiffs Have Plausibly Plead a Continuing Violation.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) "does not [] require a plaintiff to plead specific facts explaining precisely how the defendant's conduct was unlawful." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (internal quotation marks omitted). "Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled . . . allow the court to draw the reasonable inference that the plaintiff is entitled to relief." *Id*. at 595 (internal quotation marks and citations omitted).

Appellate Case: 15-2789     Page: 10     Date Filed: 02/27/2017 Entry ID: 4505805

Plaintiffs allege that, during the limitations period, Defendants adhered to their agreed-upon 15-pound fill levels and thereby charged supracompetitive prices in furtherance of their conspiracy every time they sold a filled tank. Plaintiffs also allege that Defendants regularly communicated through at least 2010 to assure that both were complying with their 2008 agreement. While Plaintiffs need not include details related to the "who, what, where, and when" of the conspiracy, *see*, *e.g.*, *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010), Plaintiffs nevertheless include many of these details. *See*, *e.g.*, CAC ¶¶ 60-62 (JA0145-46).[2] For example, Plaintiffs allege that, during the limitations period, "Defendants regularly communicated to . . . reassure each other of their compliance with the conspiracy." *Id.* ¶ 92 (JA0151). Likewise, Plaintiffs allege that as late as 2010, AmeriGas employee Ken Janish, "dismissed concerns that Blue Rhino might undercut AmerGas on price or fill levels with words to the effect of, 'I talked to Blue Rhino, and that's not going to happen." *Id.* ¶ 13 (JA0134).[3]

---

[2] Defendants acknowledge in a footnote that Plaintiffs have named at least one individual who participated in the conspiracy. Defs. Supp. at 9 n.3. Defendants disregard these allegations because still more detail could have been included. But Plaintiffs cannot be expected to know every detail without discovery nor does *Twombly* require such exhaustive detail to render a complaint plausible.

[3] It is therefore simply untrue that Plaintiffs' allegations of misconduct during the limitations period were limited to Defendants' maintenance of conspiratorial fill levels.

6

The sufficiency of these post-2010 allegations should not be evaluated in a vacuum—"the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. Additionally, "allegations concerning [acts] that do not themselves constitute violations because they are barred by the statute of limitations still may be considered in assessing the plausibility of timely claims." *McDonough*, 799 F.3d at 946. Defendants impliedly concede that the allegations regarding the conspiracy's inception are plausible; moreover, the conspiracy is presumed to continue until expressly terminated.[4]

That Plaintiffs describe Defendants' conspiracy as having "succeeded" in 2008 is of no moment—*unlike* a merger or other one-time structural market change, Defendants' conspiracy continued only due to Defendants' continued adherence to their illegal bargain.[5] Suppose Defendants had expressly agreed in

---

[4] *See*, *e.g.*, *United States v. Williams*, 87 F.3d 249, 253 (8th Cir. 1996) (quoting *United States v. Lewis*, 759 F.2d 1316, 1343 (8th Cir. 1985) ("a conspiracy is presumed to exist until there has been an affirmative showing that it has been terminated so long as there is 'a continuity of purpose and a continued performance of acts.'").

[5] Defendants wrongly state that the Complaint does not support the proposition that Defendants could easily have returned to their pre-conspiratorial fill levels. Defs. Supp. at 7-8 n.2. To the contrary, the Complaint alleges that, once Defendants reached an agreement, they imposed the fill-level change within months. CAC ¶¶ 9-10 (JA0133-34). Moreover, there is no indication that Defendants were required to impose *any* structural or technological changes to effectuate their conspiracy. Defendants dispute Plaintiffs' characterization but Plaintiffs are entitled to reasonable inferences such as these.

7

2008 that they would charge $3 per pound until they mutually agreed to change the price. Suppose that, without further communication, Defendants adhered to this agreed-upon price until they were sued in 2014. No one could doubt that purchasers could recover damages for sales made for the prior four years.

Suppose that, instead of an agreement to sell at $3 per pound, Defendants agreed to only sell tanks filled with 15 pounds of propane such that no tank sold from 2008 to 2014 contained more than 15 pounds. Defendants fail to explain why sales at fixed quantities should be treated differently than sales at fixed prices.[6] Plaintiffs go further here and allege that defendants *also* agreed not to reduce prices. Absent their continued adherence, either Defendant could have easily reduced prices or returned fill-levels to their pre-conspiracy levels. It was Defendants' ongoing adherence to the conspiracy that harmed Plaintiffs.[7]

---

[6] As the FTC said in its statement accompanying the Complaint: "Reducing the volume of propane gas in a tank while keeping the price constant is equivalent to a per unit price increase." *In the Matter of Ferrellgas Partners*, FTC Dkt. No. 9360, 2014 WL 5787605, at *7 (Oct. 31, 2014).

[7] While the FTC Complaint focuses on the conduct aimed at Walmart, the Complaint also alleges: "This concerted action had the purpose and effect of raising the effective wholesale prices at which Blue Rhino and AmeriGas sold propane exchange tanks to Walmart, *as well as to other customers in the United States*." Administrative Compl. at 2, *In the Matter of Ferrellgas Partners*, FTC Dkt. No. 9360 (Mar. 27, 2014) (emphasis added). The FTC Complaint, filed in 2014, also seeks to enjoin Defendants from engaging in the anticompetitive practices described. Such relief would have been unnecessary had the defendants already abandoned their conspiracy and returned to competition.

8

Defendants' assertion that because there were, "innumerable occasions on which Defendants" set prices for propane tanks, "there is every reason to wonder how the 2008 fill-level changes affected prices—set through individually negotiated contracts with retailers—years later" should be entirely disregarded. Defs. Supp. at 11. There was no evidence or allegation that Defendants ever changed their prices between 2008 and 2014 and there is no reason to believe that adherence to an agreed-upon 15-pound fill level during those six years failed to have an impact on prices.[8]

## C. Continued Conspiratorial Communications Cannot be Reduced to Lawful Reaffirmations.

Even assuming sales at supracompetitive prices were not themselves overt acts demonstrating a continuing violation, which they are, Plaintiffs have plausibly alleged other overt acts during the limitations period—including continued conspiratorial communications.

As the Court explained in *Midwestern Machinery*, a cartel is an "ongoing scheme" that inherently requires continued communications between co-conspirators in order to endure, and that those communications are evidence of a

---

[8] Defendants condemn Plaintiffs' allegations relating to the charging of supracompetitive prices as insufficient because Plaintiffs do not allege what prices in a "competitive" market would have been. Defs. Supp. at 10 n.4. But no court has required such facts before discovery. Indeed, determining what prices would have been "but for" defendants' conspiracy requires access to materials solely in Defendants' control, namely transactional data, and expert analysis.

9

continuing violation. In the context of a horizontal conspiracy, continued meetings to monitor compliance with the conspiracy "are overt acts that begin a new statute of limitations because *they serve to further the objectives of the conspiracy.*" 392 F.3d at 269 (emphasis added).

*Midwestern Machinery* did not require that these communications *change or tweak* the nature of the conspiracy—rather, the fact that continued "cartel meetings occurred to effectuate a price-fixing agreement" rendered them overt acts sufficient to establish a continuing violation. *Id.* at 271. Any other rule would be incoherent, since ongoing communications to make sure no one is reducing prices or competing for particular customers, as alleged in paragraph 92 *independently* qualify as unlawful acts, and would thus be actionable even absent the earlier conspiracy. *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 320(c)(2) (4th Ed. 2016).

Defendants' cited authority, the majority of which does not involve horizontal conspiracies to eliminate price competition, is not to the contrary. *See supra* n.1; *see also Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999) (resale price maintenance under the Robinson-Patman Act); *Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013) (RICO); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051-52 (5th Cir. 1982) (tying claim).

10

The only case cited by Defendants that even alleges a conspiracy among horizontal competitors—*Peck v. Gen. Motors Corp.*—did not involve allegations of continued conspiratorial communications or even continued sales at supracompetitive prices.[9] 894 F.2d 844, 849 (6th Cir. 1990). The only alleged "overt acts" during the limitations period were the plaintiffs' own bankruptcy and job loss. *Id.* at 849. The Sixth Circuit held that these "rippl[e] effects" did not constitute overt acts—a holding that in no way contradicts *Midwestern Machinery*'s assertion that conspiratorial meetings *are* overt acts.

Defendants wrongly characterize Plaintiffs as only alleging that Defendants communicated to "maintain" their fill-level conspiracy. But, as described in the prior section, Plaintiffs allege that Defendants' misconduct during the limitations period went beyond their original conspiracy. But even if Plaintiffs had only alleged communications to "maintain" fill-levels or prices at non-competitive levels, such communications would be unlawful overt acts. Any other interpretation of the law would allow a cartel to continue to charge supracompetitive prices indefinitely so long as it did not "change or modify" its original agreement. Such activity—classically unlawful conduct—cannot be what

---

[9] *Peck* principally involved claims of price discrimination under the Robinson-Patman Act, but also raised claims under the Sherman Act. Because the plaintiff in *Peck* lacked antitrust standing, the continuing violation discussion is dicta.

Appellate Case: 15-2789     Page: 16     Date Filed: 02/27/2017 Entry ID: 4505805

this Court meant by its language regarding reaffirmations. *See Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004).

### D. Defendants Mangle the Law on Speculative Damages.

Defendants try to confuse the issue by suggesting that Plaintiffs could have recovered for *future* damages as soon as Defendants initiated their conspiracy and therefore Plaintiffs' claims are untimely. Defs. Supp. at 21. Essentially, Defendants argue—without citation to any allegations, authority, or evidence—that Plaintiffs' damages from within the limitations period (2010 onward) were ascertainable and recoverable in 2009. In a price-fixing conspiracy, "damages from future overcharges necessarily fall into the speculative damages exception to the four year statute of limitations." *Meijer, Inc. v. 3M*, No 04-3871, 2006 WL 1660188, at *5 (E.D. Pa. July 13, 2005).[10]

There is no way Plaintiffs could have known in 2009 whether Defendants would continue their fill-level conspiracy after they were first sued, how much propane tanks would contain after that suit, how many tanks Plaintiffs would purchase, whether the Defendants would compete by reducing prices, what prices Defendants would charge, or how long into the future Defendants' conspiracy would continue. The ridiculousness of Defendants' position is particularly apparent in the context of a purchaser who first purchased years after the cartel

---

[10] *See also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979).

12

formed—such a purchaser could not possibly know that they would later purchase price-fixed propane, let alone prove their quantum of damages.

### E. Public Policy Demands that Unlawful Conspiracies Such as This be Prosecuted.

The continuing violation doctrine, as articulated in *Klehr* and *Wholesale Grocery*, appropriately balances the policies protected by statutes of limitations (repose, elimination of stale claims, and certainty) with the policies advanced by enforcement of the antitrust laws (the protection of competition). By permitting recovery for damages sustained during the limitations period, the policies behind statutes of limitations are preserved while still holding defendants accountable for their continuing anticompetitive conduct. As the Fifth Circuit stated, a contrary rule would, "improperly transform the limitations statute from one of repose to one of continued immunity." *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 127 (5th Cir. 1975).

## III.  CONCLUSION

Plaintiffs-Appellants respectfully request that the Court REVERSE the district court's order and REMAND for further proceedings.

Dated:  February 24, 2017                  Respectfully Submitted,

                                           */s/ H. Laddie Montague, Jr.*
                                           H. Laddie Montague, Jr.
                                           Eric L. Cramer
                                           Martin I. Twersky

13

Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215.875.3000
Facsimile: 215.875.4613
hlmontague@bm.net
ecramer@bm.net
mtwersky@bm.net
jmacnaughton@bm.net

Kit A. Pierson
Emmy L. Levens
Daniel Silverman
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave., N.W.
Suite 500
Washington, D.C. 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
kpierson@cohenmilstein.com
elevens@cohenmilstein.com
dsilverman@cohenmilstein.com

Steve Susman
Vineet Bhatia
Stephen Morrissey
Lindsay Calkins
SUSMAN GODFREY, L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 713.653.9366
Facsimile: 713.654.6666
ssusman@susmangodfrey.com
vbhatia@susmangodfrey.com
smorrisey@susmangodfrey.com
lcalkins@susmangodfrey.com

14

*Counsel for Plaintiffs-Appellants and Interim Co-Lead Counsel for the Proposed Direct Purchaser Class*

Richard F. Lombardo
SHAFFER LOMBARDO SHURIN, P.C.
2001 Wyandotte Street
Kansas City, MO 64108
Telephone: 816.931.0500
rlombardo@sls-law.com

*Counsel for Plaintiffs-Appellants and Interim Liaison Counsel for the Proposed Direct Purchaser Class*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the volume limitation allowed under the Court's Order Regarding Supplemental Briefing, (Jan. 19, 2017) because:

    a.     The petition contains 2,998 words; and

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

    a.     The brief has been prepared in a proportionally spaced typeface using Word version 14.0 (32-bit) of Microsoft Office Professional Plus 2010 in 14 point Times New Roman font.


                                        */s/ Richard F. Lombardo*
                                        Richard F. Lombardo

                                        *Counsel for Plaintiffs-Appellants and Interim Liaison Counsel for the Proposed Direct Purchaser Class*

Dated:  February 24, 2017

Appellate Case: 15-2789     Page: 21     Date Filed: 02/27/2017 Entry ID: 4505805

## CERTIFICATE OF SERVICE
## FOR DOCUMENTS FILED USING CM/ECF

I hereby certify that on February 24, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Richard F. Lombardo*
Richard F. Lombardo

*Counsel for Plaintiffs-Appellants and Interim Liaison Counsel for the Proposed Direct Purchaser Class*

Appellate Case: 15-2789    Page: 22    Date Filed: 02/27/2017 Entry ID: 4505805